FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2022 APR 12  AM 10: 01

MARGARET BOTKINS, CLERK
CASPER

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**CASPER DIVISION**

CLINTON STRANGE,

*Plaintiff*

v.

G MY BUSINESS LLC,

a Wyoming Domestic Limited Liability Company

*Defendant*

22 CV 82 -F

## CIVIL ACTION COMPLAINT

FOR VIOLATIONS OF:

THE TELEPHONE CONSUMER PROTECTION ACT OF 1991;

THE ELECTRONIC FUND TRANSFER ACT OF 1978;

THE UTAH ONLINE IMPERSONATION PROHIBITION OF 2021;

&

THE UTAH TELEPHONE AND FACSIMILE SOLICITATION ACT OF 2020

---

### PRELIMINARY STATEMENTS:

1. The *pro se* Plaintiff CLINTON STRANGE ("PLAINTIFF") brings this action in good faith against Defendant G MY BUSINESS LLC, a Wyoming Domestic Limited Liability Company ("DEFENDANT") for violations of the federal Telephone Consumer Protection Act of 1991 ("TCPA") for placing autodialed calls to the Plaintiff's Do-Not-Call List registered cellphone number utilizing an Automatic Telephone Dialing System ("ATDS") while pretending to be Google, LLC ("GOOGLE") in order to fraudulently obtain money in violation of the federal Electronic Fund Transfer Act of 1978 ("EFTA"), and related Utah Laws.

2.  Plaintiff seeks to recover (from Defendant) his Actual, Statutory, and or Trebled Statutory
    damages along with injunctive relief enjoining Defendant from future violations together
    along with an award of all costs, fees, and or expenses associated with bringing and
    litigating the action to judgment plus pre and or post judgment interest as allowable by law.

### JURISDICTION & VENUE:

3.  Jurisdiction primarily arises in this U.S. District Court under a Federal Question as the
    TCPA, and EFTA are federal statutes pursuant to 28 U.S. Code § 1331.

4.  Supplemental Jurisdiction would be properly applied relative to the Plaintiff's Utah State
    Law Claims as they arise out of the same nucleus and set of operative facts that are under
    federal question jurisdiction, and the actions and or omissions arising under Utah Law
    involve conduct affecting interstate commerce pursuant to 28 U.S. Code § 1367.

5.  Venue lies proper in this U.S. District as the Defendant is a Wyoming Domestic Limited
    Liability Company and has a registered agent and a principal place of business located in
    this district pursuant to 28 U.S. Code § 1391.

### THE PARTIES:

6.  Plaintiff CLINTON STRANGE is an adult individual residing at the address of:

    CLINTON STRANGE

    7021 WINBURN DRIVE

    GREENWOOD, LA 71033

7.  Defendant G MY BUSINESS LLC, is a Wyoming Domestic Limited Liability Company
    who, according to the Wyoming Secretary of State, maintains a principal place of business
    and a registered agent at the address of:

    Cloud Peak Law, LLC

    c/o: G MY BUSINESS LLC

1095 Sugar View Dr, Ste 500

Sheridan, WY 82801

**FACTUAL ALLEGATIONS:**

Plaintiff's Residential Use of His Cellphone

8.  Plaintiff was an employee of Sears Roebuck & Co. from November 1997 to November 2001; a Soldier in the U.S. Army from November 2001 to December 2002; and rehired by Sears Roebuck & Co. in March 2003 where he remained until August 2016.

9.  The Plaintiff obtained (meaning subscribed to) a personal Verizon Wireless cellphone number (318) 423-5057 shortly before leaving Sears Roebuck & Co. ("SEARS") sometime between June 2016 to July 2016.

10. The Plaintiff worked (exclusively) for Sears Roebuck & Co. as a contractor from August 2016 to about December 2017 to perform In-Home services for Sears' Customers.

11. The Plaintiff never held himself nor his cellphone number out to the world as a business, never advertised, or operated a website. If he ever did, it was to conduct (mandated) home-based business obligations on behalf of his employer (Sears).

12. Annoyed by intrusive telemarketing calls, the Plaintiff registered his cellphone number (318) 423-5057 on the U.S. Federal Trade Commission's Do-Not-Call List website on January 3, 2018. The registry was confirmed via electronic mail on January 4, 2018.

The Documented Incidents Giving Rise to the Complaint

13. On July 8, 2021, Bright Heights Enterprises, LLC of Santaquin, Utah entered into an agreement with SMJD Global Services Private Limited wherein SMJD Global Services Private Limited was obliged to provide *leads* to Bright Heights Enterprises, LLC via compliant marketing techniques pursuant to a Utah contract [See Exhibit A].

14. Plaintiff alleges that the foregoing contract bound SMJD Global Services Private Limited, and its owner to abide by Federal Law & State Law (of the U.S. & Utah).

15. Plaintiff alleges that SMJD Global Services Private Limited, never intended to comply with the "compliance" provisions of the agreement, and *sub-signed* its obligations to perform to G My Business[1] as a wholly owned entity under the control of SIDDHARTH MAHENDRU, who states on his LinkedIn page that SMJD Global Services Private Limited and G MY BUSINESS LLC are a "SMJD Group Of Companies" of which he (SIDDHARTH MAHENDRU) is the "co-founder" and "owner" of.

16. A precursor to the events detailed below are: (1) that, according to domain registry site GoDaddy.com,  on "Creation Date" : 2020-12-13T10:30:11Z Defendant G MY BUSINESS LLC registered the site: gmb-google.com. and  (2) Defendant G MY BUSINESS LLC subscribed to a multitude of both VoIP Telecommunications enabling telecommunications accounts, and (3) contracted to provide payment processing of credit card charges via U.S. Payment Processor behemoths such as Authorize.net, LLC, Stripe, Inc. and or ChargeMonk. Inc. on behalf of third-party  entities.

17. Defendant's LinkedIn page published by its Owner and co-founder SIDDHARTH MAHENDRU, displays the company information, image, and logo as below:

**SIDDHARTH MAHENDRU**
Co-Founder and Owner



**G MY BUSINESS LLC**
*Sheridan, Wyoming, United States*  Contact info

---

1- https://www.linkedin.com/in/siddharth-mahendru-27b60a1a7/?lipi=urn%3Ali%3Apage%3Ad_flagship3_profile_view_base%3B6E3x2PrAQDyyWlARInSmmw%3D%3D#experience – page last visited April 8, 2022, at 12:21 am CST

18. On September 24, 2021, at 5:04pm CST Defendant acting by and through its agent's servants, and or employees placed a call to the Plaintiff's cellphone number 318-423-5057 utilizing an ATDS, as depicted in the below screen capture Labeled Figure A that displayed "Restricted" in the Caller ID field. When Plaintiff answered the call, he was initially met by silence, and Plaintiff said "Hello-Hello" and a few seconds later he heard a boop tone indicative of a Vici Dialer or similar predictive dialer. After the boop tone sounded he heard a busy boiler-room call center and then a young lady introduced herself as "Jenna" with Google. Jenna explained that Plaintiff's Google Map Listings were going to stop working unless Plaintiff paid $399.

19. During the conversation, Plaintiff provided Jenna with his VA Benefits Debit Card information so Google could get their money and Plaintiff's Google Map Listings would not be in danger of cancelation, and on September 24, 2021, at 5:13pm CST Defendant emailed Plaintiff a purchase receipt for $499 from web@webglobalamerica.com.

20. On September 24, 2021, at 5:15pm CST Defendant acting by and through its agent's servants, and or employees placed a call to the Plaintiff's cellphone number 318-423-5057 utilizing an ATDS and a Caller ID No. of 727-314-7576, as depicted in the below screen capture Labeled Figure A. This call was auto generated as a part of Defendant's automated business processes and was not manually triggered. When Plaintiff answered the call, he was initially met by silence, and Plaintiff said "Hello-Hello" and a few seconds later he heard a boop tone indicative of a Vici Dialer or similar predictive dialer. After the boop tone sounded he heard a busy boiler-room call center and then a young man came on the line who stated he was with Google Billing Support. Plaintiff informed the young gentleman that he believed that they might be a scam, and he should immediately refund

the Plaintiff's $499 and stop placing calls to his number. Then, On September 24, 2021, at

5:23pm CST Defendant acting by and through its agent's servants, and or employees

placed a call to the Plaintiff's cellphone number 318-423-5057 utilizing an ATDS, as

depicted in the below screen capture Labeled Figure A that displayed "Restricted" in the

Caller ID field. This call was auto generated as a part of Defendant's automated business

processes and was not manually triggered. When Plaintiff answered the call, he was

initially met by silence, and Plaintiff said "Hello-Hello" and a few seconds later he heard a

boop tone indicative of a Vici Dialer or similar predictive dialer. After the boop tone

sounded he heard a busy boiler-room call center and then was reconnected with  "Jenna"

with Google. Jenna explained that Plaintiff's suspicions (about them being Google

Imposters) was completely unfounded and that Plaintiff's Google Map Listings were going

to stop working unless Plaintiff paid $399. Plaintiff told Jenna that he did not believe her.

Jenna then, on September 24, 2021, at 5:26pm CST, emailed Plaintiff a Google Invoice

from support@gmb-google.com for $399.00 in an apparent attempt to convince the

Plaintiff that Defendant/s were not Google Impersonation Scammers [See Exhibit B].

21. Plaintiff told Jenna that if he received another call from the Defendant he would sue.



**Figure A**

22. On the following day, September 25, 2021, beginning at 9:04am CST, Defendant

(apparently undeterred by Plaintiff's demands to quit calling) placed three (3) more calls to

the Plaintiff's cellphone number 318-423-5057 using an ATDS that Plaintiff did not answer

as depicted below in the image Labeled Figure B.



**Figure B**



**Figure C**                                    **Figure D**

23. On September 28, 2021, at 7:18pm CST Defendant acting by and through its agent's servants, and or employees placed a call to the Plaintiff's cellphone number 318-423-5057 utilizing an ATDS and a Caller ID No. of 469-830-3649, as depicted in the above screen capture Labeled Figure C. This call was auto generated as a part of Defendant's automated business processes and was not manually triggered. When Plaintiff answered the call, he was initially met by silence, and Plaintiff said "Hello" and a few seconds later he heard a boop tone indicative of a Vici Dialer or similar predictive dialer. After the boop tone sounded he heard a busy boiler-room call center and then a young man came on the line who stated he was with Google. Plaintiff had been drinking a few beers and yelled at the Caller to stop calling him. Defendant's agent quickly disconnected the call.

24. On October 22, 2021, at 2:05pm CST Defendant acting by and through its agent's servants, and or employees placed a call to the Plaintiff's cellphone number 318-423-5057 utilizing an ATDS and a Caller ID No. of "Restricted", as depicted in the above screen capture Labeled Figure D. This call was auto generated as a part of Defendant's automated business processes and was not manually triggered. When Plaintiff answered the call, he was initially met by silence, and Plaintiff said "Hello-Hello" and a few seconds later he heard a boop tone indicative of a Vici Dialer or similar predictive dialer. After the boop tone sounded he heard a busy boiler-room call center and then a young man came on the line who stated he was with Google. Plaintiff engaged the Caller for over 12 minutes trying to convince him to try and delete the Plaintiff's number from their automated call system.

The Plaintiff's Alleged Harm & Injuries

25. In *Rivera v. Exeter Finance Corp.*, No. 20-1031, 2020 WL 6844032, at *1 (10th Cir. Nov. 23, 2020), the Tenth U.S. Circuit Court of Appeals was confronted with a case about "[p]esky robocalls: we all get them, we all hate them, and yet we cannot seem to get rid of them, no matter how many times we unsubscribe, hang up, or share choice words with the machine on the other end of the line." The plaintiff in *that* case evidently "share[d] this sentiment" with Chief Judge Tymkovich, T.

26. Plaintiff suffered the harm and injuries of the invasion of his privacy, solitude and seclusion, and the shattering of the domestic peace and tranquility of his home by Defendant's relentless autodialed calls.

27. Plaintiff uses his cellphone for a primary residential line, and as a bedside alarm clock, cooking timer, and a home telemedicine tool.

28. Defendant's conduct dispossessed Plaintiff (temporarily) of his chattel (his cellphone) on at least nine (9) occasions from September 24, 2021, to October 22, 2021.

**THE COUNTS & CAUSES OF ACTION:**

**(Plaintiff v. Defendant)**

**COUNT I:**

**Violations of the Telephone Consumer Protection Act of 1991**

**Autodialed Call Prohibition - 47 U.S. Code § 227(b)**

29. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

30. The TCPA's Autodialed Call Prohibition - 47 U.S. Code § 227(b)(1)(A)(iii) – prohibits Callers like Defendant who employed what is known as an Automatic Telephone Dialing System (ATDS)—"equipment which has the capacity . . . to store or produce telephone

numbers to be called, using a random or sequential number generator[,] and to dial such numbers." 47 U.S.C. § 227(a)(1) to place unwanted calls to non-consenting parties.

31. Defendant's dialing equipment has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator[,] and to dial such numbers as evidenced by the rapid fire calls in September 2021 (09/24 – 09/25).

32. Section 227(b) of the TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). The TCPA creates a private right of action to enjoin violations of Section 227(b) and collect $500 in monetary damages per violation. § 227(b)(3). Willful or knowing violations are punishable by treble damages—$1,500 per violation. *Id*.

33. Defendant is liable to the Plaintiff for at least nine (9) separate violations under this Count totaling $4,500, which the Court in its discretion may treble to $13,500.

34. Plaintiff is entitled to and seeks injunctive relief enjoining Defendant from future violations pursuant to § 227(b)(3)(A).

35. The act provides that the Court can award both such forms of relief and trebled damages pursuant to 47 U.S. Code § 227(b)(3)(C).

### COUNT II:

#### Violations of the Telephone Consumer Protection Act of 1991
#### Do-Not-Call Violations - 47 U.S. Code § 227(c)

36. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

37. The TCPA creates another private right of action to enjoin violations of the FCC

regulations promulgated under Section 227(c), and like in Section 227(b), plaintiffs can

seek up to $1,500 per violation. § 227(c)(5).

38. The regulations set forth by the U.S. Federal Communications Commission ("FCC")

applicable to this Count are codified at 47 C.F.R. § 64.1200(d). (*Id.*) Section 64.1200(d)

"relates to a marketer's duty to prepare internal policies to receive and implement

affirmative requests not to receive calls." *Bailey v. Domino's Pizza, LLC*, 867 F.Supp.2d

835, 842 (E.D. La. 2012). That subsection opens with : No person or entity shall initiate

any call for telemarketing purposes to a residential telephone subscriber unless such person

or entity has instituted procedures for maintaining a list of persons who request not to

receive telemarketing calls made by or on behalf of that person or entity. The procedures

instituted must meet the following minimum standards[.] § 64.1200(d).7 One of those

"*minimum standards*" is that [a] person or entity making . . . any call for telemarketing

purposes must provide the called party with the name of the individual caller, the name of

the person or entity on whose behalf the call is being made, and a telephone number or

address at which the person or entity may be contacted. § 64.1200(d)(4). Plaintiff invokes

this *specific rule* as forming the basis for the Defendant's liability. Because in their

marketing messages they did not provide Plaintiff with "the name of the individual caller,"

the Defendant violated the regulation, and therefore the statute, giving Plaintiff grounds to

sue. Defendant *repeatedly* misrepresented themselves to Plaintiff as being ***Google***.

Defendant willfully violated § 64.1200(d) on each of their (9) documented

calls"[A]dequate identification information is vital so that consumers can determine the

purpose of the call, possibly make a do-not-call request, and monitor compliance with the

TCPA rules." *Rules and Regulations Implementing the TCPA*, 68 Fed. Reg. 44144, 44163 (July 25, 2003).

39. In addition to the above, Plaintiff's 318-423-5057 cellphone number was registered with the FTC.Gov's Do-Not-Call List over 31 days prior to the Defendant's first call.

40. For the foregoing reasons, the Court should award Plaintiff $4,500 in statutory damages, and or trebled statutory damages of $13,500 (if the Court finds Defendant's violations were willful and knowing), under this Count.

### COUNT III:

### Violations of the Electronic Fund Transfer Act of 1978
### Civil Liability - 15 U.S. Code § 1693 *et seq.*

41. Plaintiff incorporates paragraphs 18 through 20 as though the same were set forth at length herein.

42. The Electronic Fund Transfer Act of 1978 at 15 U.S. Code § 1693m(a)(2)(A) provides for a Statutory Civil Penalty and private right of action of up to $1,000 per lawsuit.

43. Plaintiff seeks to recover up to $1,000 from Defendant under this Count.

### CAUSE OF ACTION No. IV:

### Violations of the Utah Telephone and Facsimile Solicitation Act of 2020
### Utah Code Section 13-25a-107 *et seq.*

44. Plaintiff incorporates paragraphs 20 through 24 as though the same were set forth at length herein.

45. Utah Code Section 13-25a-107 permits a court in a private action under the Telephone and Facsimile Solicitation Act to award a person treble the amount of the person's damages under certain conditions.

46. Utah Code Section 13-25a-107(1) provides In addition to any other remedies, a person may

bring an action in any state court of competent jurisdiction if:

(a) (i) the person has received two or more telephone solicitations or facsimile 36

advertisements from the same individual or entity that: (A) violates this chapter; or (B)

violates Title 47 U.S.C. 227; and (ii) the person, following the first telephone solicitation

or facsimile advertisement, notified the sender of the person's objection to receiving the

telephone solicitation or facsimile advertisement; or (b) the person has received one

telephone solicitation or facsimile advertisement in violation of:

(i) Subsection 13-25a-103(1);

(ii) Subsection 13-25a-103(3);

(iii) Subsection 13-25a-103(5);

(iv) Subsection 13-25a-103(6); or

(v) Subsection 13-25a-104(1).

(2) In a suit brought under Subsection (1)[,]:

(a) a person may:

[(a)] (i) recover the greater of $500 or the amount of the pecuniary loss, if any;

[(b)] (ii) recover court costs and reasonable attorneys' fees as determined by the court;

and

[(c)] (iii) seek to enjoin any conduct in violation of this chapter[.]; and

(b) the court may award a person treble the amount of the person's pecuniary loss, if the

court finds that a violation was knowing and willful.

47. As detailed in paragraphs 15-22 the Defendant violated at least eighteen (18) separate

counts of 47 U.S. Code § 227 et seq. under subsections (b) and (c) respectively in nine (9)

documented phone calls. Defendant is liable to the Plaintiff for $500 for each of the

eighteen (18) violations of Utah law mirroring 47 U.S. Code § 227 *et seq*. totaling $9,000.

48. Defendant also violated Utah Code Section 13-25a-103(6) which states, "A telephone

solicitor may not withhold the display of the telephone solicitor's telephone number from a

caller identification service when that number is being used for telemarketing purposes and when the telephone solicitor's service or equipment is capable of allowing the display of the number."

49. By displaying "Restricted" in the Caller ID field, Defendant violated Utah Code Section 13-25a-103(6): Two (2) times on September 24, 2021; Two (2) times on September 25, 2021; and One (1) time on October 22, 2021, creating an additional five (5) violations of Utah Code Section 13-25a-107 *et seq.* at $500 each totaling $2,500.

50. Defendant is liable to the Plaintiff for a grand total of $11,500 under this Cause of Action pursuant to Utah Code Section 13-25a-107(1)(a) and 13-25a-107(1)(b)(iv).

**CAUSE OF ACTION No. V:**

**Violations of the Utah Online Impersonation Prohibition**

**Tort Damages under Utah Law**

**Pursuant to Violations of Utah Code Section 76-9-201 *et seq.***

51. Plaintiff incorporates all the foregoing paragraphs as though the same were set forth at length herein.

52. Utah Code Section 76-9-201(1)(c) defines "Electronic communication device" includes a telephone, a facsimile machine, electronic mail, a pager, a computer, or another device or medium that can be used to communicate electronically.

53. Utah Code Section 76-9-201(2) states: Except to the extent the person's conduct constitutes an offense under Section 76-9-203, a person is guilty of electronic communication harassment and subject to prosecution in the jurisdiction where the communication originated or was received if with intent to intimidate, abuse, threaten, harass, frighten, or disrupt the electronic communications of another, the person:

(a) (i) makes repeated contact by means of electronic communications, regardless of whether a conversation ensues; or (ii) after the recipient has requested or informed the person not to contact the recipient, and the person repeatedly or continuously: (A) contacts the electronic communication device of the recipient; or (3) A person [who] is guilty of electronic communication harassment if the person: (a) electronically publishes, posts, or otherwise discloses personal identifying information of another individual in a public online site or forum with the intent to abuse, threaten, or disrupt the other individual's electronic communication and without the other individual's permission [is guilty of electronic communication harassment.]; or (b) sends a communication by electronic mail, instant message, or other similar means, if: (i) the communication references personal identifying information of another individual; and (ii) the person sends the communication: (A) without the individual's consent; and (B) with the intent to cause a recipient of the communication to reasonably believe that the individual authorized or sent the communication; and (iii) with the intent to: (A) cause an individual physical, emotional, or economic injury or damage; or (B) defraud an individual.

54. Utah Code Section 76-9-201(5) provides that : Except as provided under Subsection (5)(b), criminal prosecution under this section does not affect an individual's right to bring a civil action for damages suffered as a result of the commission of an offense under this section. (b) This section does not create a civil cause of action based on electronic communications made for legitimate business purposes.

54. Each and every one of Defendant's Google Impersonation calls to the Plaintiff's

cellphone constituted a separate violation of Utah Code Section 76-9-201 *et seq*. None of the calls were made for a *legitimate* business purpose.

55. Defendant's email to the Plaintiff on September 24, 2021, pretending to be Google showed intent to defraud, cause harm, and economic injury while Defendant was impersonating Google.

56. Defendant is liable to Plaintiff for actual damages under this Cause of Action to be determined by a fact finder at trial under Utah Tort Law.

**PRAYER FOR RELIEF:**

<div align="right">~~~**Jury Trial Demanded by Plaintiff**~~~</div>

**Wherefore,** Plaintiff seeks judgment in Plaintiff's favor, and damages against Defendant based on the following requested relief:

Actual Damages;

Statutory Damages;

Stacked Damages;

Treble Damages;

Pre and or Post Judgment Interest;

Recovery of all Costs, Expenses and Fees associated with bringing and Litigating the Action to Judgment;

, and such other and further relief the Court deems necessary just and or proper.

Respectfully Submitted,

X _____      4-8-2022

Clinton Strange                                      Dated
*Pro Se*
7021 Winburn Drive
Greenwood, LA 71033
(318) 423-5057
StrangeC982@gmail.com

**CERTIFICATE OF COMPLIANCE:**

I, the undersigned, certify that the foregoing "CIVIL ACTION COMPLAINT" was drafted and or prepared in 12-point font Times New Roman, a Type-Selection (and size) approved by this Court pursuant to LR 10.1(a)

s/ Clinton Strange          April 8, 2022